IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JANICIA D. HUGHES,<br>  Plaintiff | : | |
| | : | |
| v. | : | CIVIL NO. AMD 98-4201 |
| | : | |
| THE NEW BALTIMORE CITY<br>BOARD OF SCHOOL<br>COMMISSIONERS, et al.,<br>  Defendants | :<br>:<br>:<br>: | |

...oOo...

MEMORANDUM

Plaintiff Janicia D. Hughes has been since 1993 a school police officer for Baltimore City.[1] On or about December 28, 1998, the court granted her leave to proceed *in forma pauperis* and she then filed a pro se complaint for employment discrimination using one of the forms maintained for that purpose in the clerk's office. Subsequently, an attorney entered an appearance on Hughes's behalf, but he did not seek leave to file, and he did not file, an amended complaint.

The pro se complaint, read in the light most favorable to Hughes, alleges claims for disparate treatment sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.*[2] The claims arise out of Hughes's request that

---

[1] Hughes has purported to join numerous defendants, at least one of whom is not a legal entity and another of whom clearly is not her employer. In the view I take of the case, I need not pause over issues of misjoinder or failure to name parties in the EEOC charge of discrimination.

[2] The parties seem to believe that there are pending before me claims for defamation and sexual harassment. In fact, as I explain *infra* in text, the alleged defamation is clearly mentioned

(continued...)

she be assigned to "tactical" duty with the school police force, a request which was ultimately granted, but only after she had filed a charge of sex discrimination with the Equal Employment Opportunity Commission.

Discovery has been completed. Pending before the court is the defendants' motion for summary judgment. No hearing is necessary. Local Rule 105.6 (D. Md. 1999). The motion will be granted for the reasons set forth below.

On the one hand, the record shows that assignment as a "tactical" officer involves no increase in compensation or benefits, and indeed such an assignment largely amounts to a symbolic status having merely an incidental effect on the terms and conditions of employment as a school police officer. For example, "tactical" officers could carry guns and because they used their personal vehicles, they received mileage reimbursement. On the other hand, viewed in the light most favorable to Hughes, as of course they must be, the facts in the record suggest that assignment as a "tactical" officer likely has a beneficial effect on the

---

[2](...continued)
only in an undated letter Hughes wrote to the EEOC (and described therein as evidence of *retaliation*) in an apparent effort to get the EEOC to continue to investigate her charge. Moreover, it is clear that Hughes has never exhausted any discrete claim of sexual harassment; indeed, after counsel entered his appearance on her behalf, no effort was made to seek leave to amend the complaint to include such a claim, even assuming such a claim had been timely exhausted. Accordingly, as discussed in text, the only timely exhausted claims reasonably encompassed by Hughes's unamended pro se complaint are the two claims discussed in text-- disparate treatment sex discrimination and retaliation.

To be sure, there is evidence in the record of one especially distasteful statement made to Hughes by her sergeant in 1998 (well after she filed her EEOC charge) which reflected his callous regard for an apparent female student who was gang raped. The sergeant was disciplined, however, and there is no evidence that he ever made any further inappropriate statements.

promotional prospects for a school police officer, i.e., eight of the 12 sergeants on the force previously served as "tactical" officers. Accordingly, I shall assume that denial of such an assignment rises to the level of an "adverse employment action" cognizable under Title VII. *See Settle v. Baltimore County*, 34 F.Supp.2d 969, 987-89 (D.Md. 1999)(explicating the requirement of an "adverse employment action" and discussing, *inter alia*, *Page v. Bolger*, 645 F.2d 227 (4th Cir.)(in banc), *cert. denied*, 454 U.S. 892 (1981), and *Munday v. Waste Management of N. Am., Inc.*, 126 F.3d 239, 243 (4th Cir. 1997), *cert. denied*, 118 S.Ct. 1053 (1998)).

In any event, all that is shown by the record here is that Hughes requested assignment as a "tactical" officer in 1995 and again in 1996 and she did not receive such an assignment. Indeed, she contends that she never even received a *response* to her requests from the superior officer responsible for making such assignments. Then, in May 1997, "an EEO Officer" advised her that "[she] would not be selected for the Tactical Officer position. The reasons given were: ability, recommendations, and seniority." *See* Defs' Exh. 1. Furthermore, Hughes testified on deposition as follows:

> Q: What evidence other than your belief do you have that you were not selected for tact[ical] because of your sex?
>
> [Plaintiff's Counsel]: Object to form.
>
> A: None.

Hughes Dep. at 176, Defs' Exh. 6.

Consistent with her response to the question asked at her deposition, the plaintiff has produced a factual record which is all but barren of admissible evidence that would reasonably support the conclusion that her belated assignment as a "tactical" officer was the product of intentional discrimination on the basis of sex.[3] *Cf. Taylor v. Virginia Union Univ.*, --- F.3d ----, 1999 WL 765871 (4th Cir. September 27, 1999)(en banc)(affirming judgment in favor of university as to discrimination claims brought by female police officers).

In the absence of any direct evidence of sex discrimination, to avoid summary judgment, Hughes must resort to the long-established burden shifting regime crafted in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, she must project evidence sufficient to establish, by a preponderance of the evidence, a prima facie case of discriminatory treatment. *Id.* Once she does so, the burden of production shifts to defendants to rebut the presumption of discrimination by articulating one or more legitimate nondiscriminatory reasons for its action. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981); *Gillins v. Berkeley Elec. Cooperative, Inc.*, 148 F.3d 413, 416-18 (4th Cir. 1998). If the defendants meet their burden of production, the presumption of discrimination created by the prima facie case is rebutted and "drops from the case," *Burdine*, 450 U.S. at 255 n. 10, and Hughes bears the ultimate burden of projecting evidence sufficient

---

[3] It appears that Hughes conceives of the case as a "disparate impact" case; that is, she has produced affidavits indicating that, even when the police chief was a woman, only one or two women ever received assignment as a "tactical" officer from the male supervisor making the assignments. Of course, this is not a "disparate impact" case and Hughes's burden is to project evidence of intentional discrimination. She has not done so.

-4-

to prove her non-selection constituted discriminatory decision making. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-11 (1993).

To make this latter showing, Hughes must project evidence sufficient to prove facts on two different levels. First, she must project evidence to establish "[t]hat the employer's proffered reason is unpersuasive, or even obviously contrived," *Hicks*, 509 U.S. at 524. Such evidence alone, however, "is not in itself sufficient, under [the Fourth Circuit's] precedents, to survive [an employer's] motion for summary judgment. [The Fourth Circuit] has adopted what is best described as the 'pretext-plus' standard for summary judgment in employment discrimination cases. *See Vaughan v. Metrahealth Companies, Inc.*, 145 F.3d 197, 201-02 (4th Cir.1998) . . . .[T]o survive a motion for summary judgment under the *McDonnell Douglas* paradigm the plaintiff must do more than merely raise a jury question about the veracity of the employer's proffered justification. The plaintiff must have developed some evidence on which a juror could reasonably base a finding that discrimination motivated the challenged employment action." *Gillins,* 148 F.3d at 418, quoting *Vaughan*, 145 F.3d at 201-02.

Even assuming Hughes has made out a prima facie case of a discriminatory non-selection for assignment as a "tactical" officer, she has not produced evidence of pretext, or evidence sufficient to permit a rational conclusion that her non-selection was motivated by improper consideration of her gender. *See Karpel v. Inova Health System Services*, 134 F.3d 1222, 1227-30 (4th Cir.1998). Thus, as Hughes has failed to produce evidence supporting

-5-

an inference that her non-selection was actually motivated by antipathy toward her gender rather than the reasons asserted by defendants,[4] defendants are entitled to judgment as a matter of law as to her disparate treatment sex discrimination claim.

As for her retaliation claim, Hughes fares no better. Ordinarily, to make out a prima facie case of retaliation, Hughes would have to project evidence sufficient to show that: (1) she engaged in protected activity; (2) defendants took adverse employment action against her; and (3) a causal connection existed between the protected activity and the adverse action. *Beall v. Abbott Lab.*, 130 F.3d 614, 619 (4th Cir. 1997); *see Gibson v. Old Town Trolley Tours of Washington, D.C., Inc.*, 160 F.3d 177 (4th Cir. 1998). The fact that Hughes actually received the very assignment she claims her agency discriminatorily denied her seemingly fatally undermines any claim that she was the "victim" of retaliation. To the contrary, as a result of her complaints over the rather loose and informal manner in which "tactical" assignments were made, the process was "codified" in part. *See* Defs' Exh. 23. Furthermore, the record contains an express written promise by the head of the police department that Hughes "*will not be discriminated against as a result of having registered this complaint.*" *Id.* at 2 (emphasis added).

---

[4]Hughes's employer has cited "ability, recommendations and seniority" as the nondiscriminatory reasons for her non-selection. Hughes has interpreted "seniority" as a requirement that an officer have at least two years of experience and has generated a dispute of fact as to whether males (but not females) were assigned as "tactical" officers without two years of experience. She has not rebutted the suggestion that she lacked the "ability" and did not receive appropriate "recommendations" for assignment as a "tactical" officer. Of course, she had been so assigned as of the filing of this case in December 1998.

In any event, Hughes seems not to assert a traditional retaliation claim (perhaps for the reasons stated above); rather, so far as I can discern, she asserts one of the new species of "retaliatory harassment" claims. Specifically, in a letter to the EEOC, she pointed to the following as acts of retaliation: (1) "three assignment changes within a year;" (2) "accrued leave being denied;" (3) "defamation of character;" (4) "barring from Carver High School;" (5) "harassment about closing EEOC complaint;" and (6) "intimidation and other issues that I believe school police could have initiated." In *Settle*, recognizing that the Fourth Circuit has not explicitly acknowledged "retaliatory harassment" as a form of hostile work environment prohibited by Title VII, I stated:

> Consistent with emergent authority in other circuits, I presume that, on a proper factual showing, a plaintiff could meld together the elements of a "traditional" harassment claim, i.e. the creation of an objectively hostile work environment through severe and pervasive abusive conduct, with the essential elements of a "traditional" retaliation claim, i.e., reprisal for opposing or participating in the opposition to, discriminatory policies and practices.
> Thus, under such a claim, recovery might be available if, despite the absence of a racial or sexual nexus to the creation of the hostile environment, a prima facie case could be established showing that a hostile environment was motivated by improper retaliation. "Certainly harassment in retaliation for an employee's protected activities could constitute an 'adverse employment action.'" *Cobb v. Anheuser Busch, Inc.*, 793 F.Supp. 1457, 1491 (E.D. Mo. 1990); *Drake v. Minnesota Mining & Manuf. Co.*, 134 F.3d 878, 886 (7th Cir. 1998) ("retaliation can take the form of hostile work environment"); *Kim v. Nash Finch Co.*, 123 F.3d 1046, 1060 (8th Cir. 1997) (systematic retaliation in form of reduction of job duties, disciplinary action, negative personnel reports and required remedial training constituted adverse employment action as a matter of law).

34 F.Supp.2d at 994.

Having carefully examined the record, I am persuaded that, as a matter of law, Hughes has failed to support her claim of "retaliatory harassment" with substantial admissible evidence sufficient to establish an adverse change in her working conditions. What I said in *Settle* applies here: "In evaluating plaintiffs' efforts to project evidence of a prima facie case, it must be recalled that Title VII's protections do not insulate one from either the normal day-to-day dissatisfactions and annoyances commonly arising in any workplace or from the sometimes unpleasantness of a surly, strict or even personally insufferable and demanding supervisor." 34 F.Supp.2d at 991; *and see id.* at 993 ("Accordingly, '[s]ince supervision and [retaliation] are very different . . . a [retaliatory] animus cannot be inferred from the day-to-day conduct of supervisors that [plaintiffs] may deem inconvenient, inconsiderate or insufficiently solicitous.'"(citation omitted). *See also Olivares v. NASA*, 934 F.Supp. 698, 705 (D.Md.1996) ("[T]he fact that an employee may have filed an EEO claim gives him no license to vilify supervisors or co-workers or indeed to make every response of theirs to such vilification the basis of a claim of retaliation.").

Furthermore, even if it is assumed that plaintiff has established a prima facie case of "retaliatory harassment" based on the reassignments and the denial of leave, defendants have offered legitimate, non-discriminatory reasons for the actions. Hughes has not come forward with evidence to establish-- beyond her own subjective belief-- that the proffered reasons were pretextual and that her supervisors' true motivation was retaliatory animus. "'A jury may not . . . be allowed to infer [retaliation] from evidence that does no more than suggest

it as a possibility.'" *Gibson v. Old Town Trolley Tours of Washington, D.C., Inc.*, 160 F.3d 177, 182 (4th Cir.1998) (quoting *Lovelace v. Sherwin-Williams Co.*, 681 F.2d 230, 245 (4th Cir.1982))(alterations in *Gibson* ).

For the reasons set forth above, the defendants' motion for summary judgment shall be granted. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). An order follows.

Filed: October 21, 1999

_____
ANDRÉ M. DAVIS
United States District Judge